IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

RANDY DALE JACKSON,     PLAINTIFF

vs.     CIVIL ACTION NO.: 4:13cv79-MPM-JMV

DR. DUNN, et al.,     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Randy Dale Jackson, a Mississippi inmate proceeding *pro se* and *in forma pauperis*, filed suit against Defendants under 42 U.S.C. § 1983 alleging deliberate indifference to his dental needs and a violation of his due process rights. Defendants have moved for summary judgment, and Jackson has responded. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that Defendants' motions should be granted, for the reasons that follow.

**Background**

Jackson is an inmate in the Mississippi Department of Corrections ("MDOC") who is currently housed at the Mississippi State Penitentiary ("MSP") at Parchman. He initially filed the instant § 1983 action against MSP dentist, Dr. Frederic Dunn, and MSP medical director, Dr. Lorenzo Cabe, alleging that they acted with deliberate indifference to his dental needs. Jackson maintains that he has a long and documented history of dental problems, and that he currently has ill-fitting dentures and is in need of several crowns on his teeth. He alleges that Dr. Dunn has examined him and determined that he needs crowns on some of his teeth, but that Dr. Dunn has informed him that MDOC does not provide crowns.

1

Jackson contends that MDOC standard operating procedures state that dental services are provided upon a showing of need, and he filed an Administrative Remedy Program ("ARP") request seeking to have crowns placed on his teeth. He alleges that Dr. Cabe, the MSP medical director, rejected his request, thereby denying Jackson necessary dental services in violation of his Eighth Amendment rights. Jackson also alleges that he had several teeth pulled between 2000 and 2002, and that the missing teeth cause facial distortion that has resulted in psychological trauma. He contends that his dental issues cause him anxiety, and that he has problems properly digesting food due to his inability to chew food well. He alleges that he is entitled to dental services that include crowns on several of his teeth and implants to hold his partial dentures in place.

After filing his initial pleading, Jackson amended his complaint to include an allegation against Faye Noel, the interim warden at MSP. Jackson maintains that he received a rule violation report ("RVR") after he was falsely charged with assaulting another inmate, and that he lost his job assignment and was placed in administrative segregation as a result. He alleges that Defendant Noel violated his due process rights by failing to expunge the allegedly false RVR.

As a result of these alleged violations, Jackson seeks monetary damages and an order requiring MDOC to refer him to an off-site specialist who can provide him dental implants and offer restorative care to his teeth.

**Summary Judgment Standard**

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Because Jackson is proceeding pro se, his pleadings are construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## Discussion

### A. Dental Care

Jackson claims that Drs. Dunn and Cabe have departed from the appropriate standard of dental care in refusing to provide him with treatment to correct his dental problems, and he maintains that they have failed to comply with their own policy by failing to ensure that he receives restorative dental care. Attached to Jackson's response to the pending motions for

3

summary judgment is the "Dental Services" policy MDOC implemented in 2004.[1] (*See* Pl. Response in Opposition to MSJ [86], 11-13). This policy provides that referrals for oral surgery specialists will be made according to need, and that "[d]ental prostheses will be provided only as medically necessary." (*Id.*). Jackson maintains that this policy establishes his right to have crowns placed over his teeth, and that Defendants' refusal to comply with this policy constitutes cruel and unusual punishment.

When the condition of an inmate's teeth or gums seriously affects his health, he has a right to dental care under the Eighth Amendment. *See Williams v. Mason*, 210 F. App'x 389 (5th Cir. 2006) (citations omitted). An inmate suing for a violation of his right to medical care under § 1983 must demonstrate that an official acted with deliberate indifference to the inmate's serious dental needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifferent is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). In order to state a claim under § 1983 of deliberate indifference to an inmate's medical condition, the inmate must demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837 (quotations omitted).

Negligence will not support the finding of a constitutional violation. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Additionally, a plaintiff's disagreement with medical professionals as to his treatment is insufficient to state a claim of deliberate indifference. *Norton*

---

[1] The Court assumes for present purposes that the provided policy is the most current dental services policy.

*v. Dimazana*, 122 F.3d 286 (5th Cir. 2001). Rather, deliberate indifference requires the inmate to show that prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted).

Jackson's dental records confirm that he has tooth decay. (*See*, *e.g.*, Drs. Dunn and Cabe MSJ, Ex. B [75]). In his *Spears*[2] testimony, Jackson stated that he entered the MDOC system in 1999 and subsequently had several cavities filled and teeth extracted. (*See* Drs. Dunn and Cabe MSJ [71], Ex. A at 2). He maintained that he was also provided top and bottom partial dentures sometime after 2004, but that the dentures never fit properly. (*Id*. at 2-3). Jackson's records demonstrate that he requested and received new dentures in 2011. (*See*, *e.g.*, Drs. Dunn and Cabe MSJ, Ex. B [75], 3-4, 13). An adjustment to the dentures was made in September 2011. (*Id.* at 15). In May and June 2012, Jackson had some filings replaced and was prescribed medication for the "gross decay" noted to his teeth. (*Id.* at 18-22).

Jackson contends, and his dental records confirm, that Dr. Frederic Dunn first provided Jackson with dental treatment on November 7, 2012, after Jackson filled out a sick call request asking for fillings to be replaced in two of his teeth. (*See id*. at 23- 24). As a result of that initial examination, Dr. Dunn noted that Jackson suffered with periodontal disease and was in need of crowns, rather than fillings, on the two teeth. (*Id.*). Jackson stated that Dr. Dunn told him at that examination that MDOC policy would not provide inmates with crowns, and Jackson stated that he did not thereafter return to Dr. Dunn seeking services. (*See, e.g.*, Drs. Dunn and Cabe

---

[2] The Court held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether a justiciable basis exists for Jackson's § 1983 claims.

MSJ[71], Ex. A, 4).

In December 2012, Jackson filed an Administrative Remedy Program ("ARP") grievance protesting extraction as a dental treatment and requesting that crowns be placed on his teeth. (*See* Pl. Response to MSJ [86] at 70-71). Dr. Lorenzo Cabe, the medical director at MSP, filed a response stating that it had been explained to Jackson during his dental visit that he needed crowns, not filings, but that crowns were not provided by MDOC. (*Id.* at 72). Jackson sought further review of that decision, asking to be sent to a specialist who would provide him with crowns. (*See id.* at 75). Dr. Cabe responded that such speciality consults were restricted for oral surgery - and not prosthodontist - purposes. (*Id.*). Thereafter, according to his dental records, Jackson made no further sick call requests for dental services, although Dr. Dunn saw Jackson once more in August 2013 for a two-year checkup. (*See* Drs. Dunn and Cabe MSJ, Ex. B [75] at 26).

In an affidavit filed in conjunction with his motion for summary judgment, Dr. Dunn states that he is a dentist providing medical services to inmates in MDOC custody through Wexford Health Services, and that he first examined Jackson on November 7, 2012. (*See* Drs. Dunn and Cabe MSJ [71], Ex. C, Aff. of Frederic Dunn). He states that Jackson had lost multiple teeth and had multiple fillings at that time, and that some of the fillings in Jackson's anterior teeth were dislodged. (*Id.* at ¶¶ 4-5). Dr. Dunn contends that treatment of the dislodged filings would require the cavity spaces to be enlarged, and that "conventional dentistry dictates crowning those teeth." (*Id.* at ¶ 6). He alleges that Wexford Health Services does not provide

6

crowns for inmates' teeth. (*Id.* at ¶ 7).[3] Dr. Dunn opines that Jackson's teeth do "not present a serious medical condition but [are] a matter of convenience and appearance[,]" and that "the partial plate previously provided to Mr. Jackson, as well as his existing teeth[,] are sufficient to meet his needs." (Id. at ¶¶ 8-9). He maintains that he only saw Jackson one other time for a two-year checkup, and that Jackson did not complain about his fillings at that time. (*Id*. at ¶ 10).

After reviewing the evidence submitted in support of and in response to the motions for summary judgment, the Court entered an order requiring Defendants Dr. Dunn and Dr. Cabe to advise the Court of any treatment alternative they had proposed to Jackson, and Jackson's response to their suggestions. (*See* ECF No. 87). Interpreting this as an order to offer Jackson additional treatment, Defendants scheduled Jackson for dental treatment and stated that they intended to offer him the option of having his teeth filed, or, alternatively, of extracting the decayed teeth and expanding his existing partial plate. (*See* ECF No. 91). Subsequently, Drs. Dunn and Cabe filed a supplemental motion for summary judgment and attached email communications between Dr. Dunn's dental assistant and defense counsel to demonstrate that Jackson had been offered alternative dental treatment and refused it. (*See* Drs. Dunn and Cabe Supp. MSJ [98]). These documents are unsworn and unauthenticated. Accordingly, the Court will not consider the evidence attached to the supplemental motion for summary judgment.

However, Jackson also responded to the Court's order. According to Jackson, he was examined for alternative dental treatment on April 18, 2014, and was told that fillings would be placed in his top, but not his bottom, teeth. (*See* ECF No. 96). Jackson states that he was

---

[3] Although it is not a contested issue, the Court ntoes that § 1983 liability applies to governmentally contracted medical providers. *West v. Atkins*, 487 U.S. 42, 49-57 (1988); *see also Mann v. King*, 1:13cv491-MTP, 2014 WL 808501 at *2 (S.D. Miss. Feb. 28, 2014).

7

displeased with this proposal that only addressed some of his cavities, but that he consented to return for treatment a few days later. (*Id.*). Jackson maintains that when he returned to the hospital on to undergo the filling procedure, he got into a disagreement with Dr. Dunn about Dr. Dunn's refusal to "properly fix all [of Jackson's teeth] that need[] serious dental care." (*Id.* at 2). Jackson admits that he signed a refusal of treatment form, but he maintains that he signed it only after Dr. Dunn's assistant told him that he could not leave the hospital until he signed the form. (*Id.*).

The determination of whether the denial of medical attention constitutes deliberate indifference is "one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981). Jackson seeks expensive dental treatment that Dr. Dunn states is unavailable to Jackson, and alternative dental treatment has been proposed. While Jackson alleges that he was forced to sign a refusal of treatment form, he admits that he got into a verbal disagreement with Dr. Dunn about the services that were to be provided, and he admits that after this disagreement, he told guards at the holding cell of the clinic that he was ready to go back to his unit. (*See* ECF No. 96). The record supports a determination that Jackson was uncooperative with Dr. Dunn's attempts to offer additional dental treatment.

Jackson is entitled to adequate dental care, but as a prisoner, he is not constitutionally entitled to the care that is available to those who are not incarcerated. *See, e.g., Shepherd v. Dallas County*, 591 F.3d 445, 455 n.3 (5th Cir. 2009); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). The fact that he would rather have extensive restorative care rather than the less desirable services that the prison can provide him does not establish deliberate indifference. *See, e.g., McQueen v. Karr*, 54 F. App'x 406, 2002 WL 31688891 (5th Cir. 2002) (finding no Eighth

Amendment violation where prisoner argued he was entitled to restorative care rather than tooth extraction). According to the competent summary judgment evidence submitted to this Court, Dr. Dunn's dental opinion is that Jackson's dentures and existing teeth are sufficient to meet Jackson's dental needs. Jackson cannot sustain his claim merely by disagreeing with that conclusion. *See Norton*, 122 F.3d at 292.

Jackson's dental records establish that he has received examinations and has been treated after he filled out sick call requests for dental care. Specifically, while he has been incarcerated, Jackson has had fillings replaced, new dentures provided, and medication prescribed for what is apparently a chronic condition. These facts rebut Jackson's allegations of deliberate indifference. *See, e.g., Golbert v. Caldwell*, 463 F.3d 339, 346 n.24 (5th Cir. 2006) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.") (citation omitted).

Moreover, the Court finds that Dr. Cabe's only involvement in this matter is the response he issued to an ARP request. Dr. Cabe's failure to satisfactorily resolve Jackson's grievance does not violate Jackson's constitutional rights. *See Geiger v. Jower*, 404 F.3d 371 (5th Cir. 2005). Accordingly, Drs. Dunn and Cabe are entitled to summary judgment.

## B. Due Process

Jackson maintains that his due process rights were violated when he was punished after being falsely implicated in a gang-related, or Security Threat Group ("STG"), attack on Offender Savinell on December 27, 2012. Jackson alleges that Defendant Noel, the Interim Warden at MSP, knew the rule violation report ("RVR") he received was false, as Offender Savinell admitted that he did not know who assaulted him. Petitioner also maintains that there are records

showing that the officer reporting the incident, Officer Proctor, lied on the RVR issued to Jackson. Despite these facts, he maintains, Noel refused to expunge the RVR, for which Petitioner received a sixty-day loss of privileges and a twenty-day period of isolation. (*See* Pl. Response in Opposition to MSJ [86], 55).

Defendant Noel maintains that she is entitled to sovereign immunity as to Jackson's claims against her in her official capacity, and that she is entitled to qualified immunity as to those claims brought against her in her individual capacity. She also argues that Jackson cannot recover any damages for emotional distress, as he has failed to allege that he suffered a physical injury as a result of the alleged violation of due process rights.

i. Eleventh Amendment

The Eleventh Amendment bars suits in federal court by a citizen against his own state or against a state agency. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A claim against Defendant Noel in her official capacity is the same as a claim against the Mississippi State Penitentiary, and she is entitled to immunity from Jackson's claim against her in her official capacity. *See, e.g., Bogard v. Cook*, 586 F.2d 399, 410 (5th Cir. 1978) (finding official capacity claims against MSP employees barred by Eleventh Amendment).

Section 1983 does not abrogate the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Mississippi has not consented to the filing of § 1983 suits against it in federal court. *See, e.g., McGarry v. Univ. of Mississippi Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (noting that Mississippi "expressly preserved sovereign immunity to suit in federal court when it enacted the Mississippi Tort Claims Act"). Because MSP has not consented to suit in this Court or otherwise waived its immunity, it cannot be held liable for money damages.

Accordingly, Jackson's claims for monetary damages against Defendant Noel are barred by the Eleventh Amendment.

ii. Qualified Immunity[4]

Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established constitutional rights of which a "reasonable person would have known." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). It is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A two-step analysis is applied to resolve claims of qualified immunity. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008). In one step, the court views the evidence in the light most favorable to the plaintiff and determines whether evidence exists that the individual defendant(s) violated the plaintiff's constitutional rights. *Id*. A court must also "consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id*. (citation omitted). A defendant's actions are deemed "objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the conduct at issue violated" clearly established law. *Thompson v. Upshur County Texas*, 245 F.3d 447, 457 (5th Cir. 2001) (citation omitted) (emphasis in original). The sequence of the two-prong inquiry is not mandatory; a court may rely upon either prong of the defense in its analysis. *See, e.g., Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citation omitted).

---

[4] The Court notes that counsel for Defendant Noel has filed a suggestion pursuant to Rule 25(a) of the Federal Rules of Civil Procedure stating that, upon information and belief, Defendant Noel died on or about May 24, 2014. (*See* ECF No. 99).

Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2003). This burden does not allow the plaintiff to "rest on conclusory allegations and assertions," but rather, requires him to "demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

In order to state a valid due process claim, Jackson must establish that he has been denied a "'liberty interest' that the prison action implicated or infringed." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) (citation omitted). Here, Jackson lost his prison privileges for sixty days after he was found guilty of assaulting Offender Savinell. An inmate has no right to prison privileges. *See Lewis v. Dretke*, 2002 WL 31845293, at *1 (5th Cir. 2002) (finding restriction on privileges resulting from allegedly false disciplinary charge does not implicate due process); *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997) (finding restriction on prison privileges is merely a change in the conditions of an inmate's confinement). Jackson was also punished by being placed in isolation for a period of twenty days. The Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be ground for a constitutional claim," because it "simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996). Therefore, Jackson has not established that he had a legally cognizable interest that was violated by Defendant Noel's actions, and he has not established a due process violation.

The Court otherwise finds that Defendant Noel's conduct did not violate clearly established federal law. Defendant Noel responded to Jackson's ARP grievance and denied his request to expunge the RVR he received for assaulting Offender Savinell. There is no constitutional right to a grievance procedure, and he possesses no constitutionally protected interest in having his grievance satisfactorily resolved. *See, e.g., Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *see also Dehghani v. Vogelgesang*, 226 F. App'x 404, 406 (5th Cir. 2007) (holding plaintiff's allegation that warden failed to adequately investigate his grievance did not amount to a constitutional violation).

Jackson also argues that various correctional officers caused him to be convicted of an RVR for assaulting Offender Savinell despite his innocence, and he contends that Defendant Noel, as Interim Warden, bears the ultimate responsibility for their actions. However, § 1983 liability requires personal involvement by the named defendant, or a showing that the defendant's "wrongful actions were causally connected to the deprivation." *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012). Defendant Noel is not subject to liability for the actions of subordinates. *See, e.g., Coleman v. Houston Indep. School Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).

Finally, the Court finds that even if it were to assume that Jackson has established a constitutional violation, he has failed to allege facts sufficient to demonstrate that "all reasonable officials similarly situated would have then known that the alleged acts" of Defendant Noel violated the Constitution. *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001). In this case, Defendant Noel denied Jackson's request to expunge his RVR, which was issued after an investigation and a disciplinary hearing. It would not be clear to a reasonable prison official

that denying Jackson's request would be a violation of federal law under these circumstances.

    iii.  Absence of injury

Under the Prison Litigation Reform Act, mental and emotional damages are not allowed unless the prisoner suffered a physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The injury must be more than *de minimis* to be compensable. *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 631 (5th Cir. 2003). Jackson alleges that he suffered emotional distress as a result of Defendant Noel's alleged actions. He has alleged no physical injury. Therefore, the injuries alleged by Jackson are not compensable.

## Conclusion

For the reasons set forth herein, Defendants' motions for summary judgment [66][71][98] are **GRANTED**, and the instant action is **DISMISSED WITH PREJUDICE**. A separate judgment in accordance with this Memorandum Opinion and Order will enter today.

**SO ORDERED** this the 9th day of July, 2014.

                                          **/s/ Michael P. Mills**
                                          **MICHAEL P. MILLS**
                                          **U.S. DISTRICT JUDGE**